N THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kelly Brunarski, | Case No. 1:16-CV-0311 |
| and | Judge Sandra W. Beckwith |
| Yvette Harman | <u>Magistrate</u> |
| Plaintiffs | |
| vs. | |
| Miami University | <u>**FIRST AMENDED COMPLAINT WITH JURY DEMAND**</u> |
| Defendant | |

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter as a federal question under 28 U.S.C. 1331, because the Complaint raises a claim under the Federal Equal Pay Act, codified at 29 U.S.C. 206(d)(1) et. seq. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. 1969, as the claims arise out of the same set of operative facts and constitute part of the same case and controversy.

2. Venue is proper in this Court as the incidents giving rise to the claim occurred in Butler County, Ohio, within the territorial jurisdiction of this Court to hear. The Court has personal jurisdiction over the Defendant as it is headquartered in Butler County, Ohio.

## PARTIES

3. Plaintiff Kelly Brunarski is a female tenured professor at Defendant Miami University, serving in the School of Business, and the Finance Department, and is a citizen of the United States and of the state of Ohio, residing at the address listed in the caption of the original

1

complaint.

4. Yvette Harman is a female tenured professor at Defendant Miami University, serving in the School of Business, and the Finance Department, and is a citizen of the United States and of the state of Ohio, residing at the address listed in the caption of the original complaint.

5. Miami University, Defendant, is a public institution of higher learning under the state of Ohio, whose headquarters are located at 501 E High St, Oxford, OH 45056, and is the employer of Plaintiffs Kelly Brunarski and Yvette Harman.

6. Since her employment in 1999, Professor Brunarski has done an exemplary job as a tenured professor in the School of Business at Defendant Miami University, garnering numerous accolades and mention of her academic achievement. She is popular with students and does an excellent job on behalf of the University.

7. Since her employment in 2000, Professor Harman has done an exemplary job as a tenured professor in the School of Business at Defendant Miami University, garnering numerous accolades and mention of her academic achievement. She is popular with students and does an excellent job on behalf of the University.

## FACTS

### DISPARATE PAY OF PLAINTIFFS AND MALE COMPARATORS

8. Dr. Kelly Brunarski was hired by Defendant Miami University as an Associate in 1999 and tenured in 2006. According to a recognized source of top tier publications in Finance journal rankings, she has had three publications in "A" ranked journals and two publications in "A-" journals, and a total of six publications since tenure. As of 10-27-15, she had 765 citations on Google Scholar, including 363 citations since 2010. She also had 153 Thomson-Reuters (SSCI) expanded citations.

9. Additionally, she has been selected by outside agencies for important honors, such as the Higher Education Mentorship Initiative (sponsored by the University of Cincinnati).

10. Dr. Brunarski received the following pay for the years 2013, 2014, and 2015, respectively: $160,500.00, $165,700.00; and $172,500.00.

11. Dr. Yvette Harman was hired by Defendant Miami University as an Assistant in 2000 and tenured as an Associate in 2006. According to a recognized source of top tier publications in Finance journal rankings, she has had one publication in an "A" ranked journal and two publications in "A-" journals, and a total of seven publications since tenure. As of 10-27-15, she had 316 citations on Google Scholar, including 193 citations since 2010. She also had 48 Thomson-Reuters (SSCI) expanded citations.

12. Additionally, she has been selected by outside agencies for important honors, such as the External Tenure and Promotion Review Committee (University of New Hampshire).

13. Dr. Yvette Harman received the following pay for the years 2013, 2014, and 2015, respectively: $163,447.00; $168,647.00; and $176,238.00.

The first comparator, Dr. David Shrider, a male, was hired by Defendant Miami University in 2004, and tenured in 2010. According to a recognized source of top tier publications in Finance journal rankings, he has had one publication in an "A" ranked journal and zero publications in "A-" journals, and a total of four publications since tenure. As of 10-27-15, he had 149 citations on Google Scholar, including 117 citations since 2010. He also had 40 Thomson-Reuters (SSCI) expanded citations.

14. Dr. Shrider received the following pay for the years 2013, 2014, and 2015, respectively: $184,015.00; $191,015.00; and $197,701.00.

15. The second comparator, Dr. David Nixon, a male, was hired by Defendant Miami University

in 2004, and tenured in 2007. According to a recognized source of top tier publications in Finance journal rankings, he has had zero publication in an "A" ranked journal and zero publications in "A-" journals, and a total of four publications since tenure. As of 10-27-15, he had 144 citations on Google Scholar, including 71 citations since 2010.  He also had 11 Thomson-Reuters (SSCI) expanded citations.

16.  Dr.  Nixon received the following pay for the years 2013, 2014, and 2015, respectively: $173,426.00, $179,026.00, $183,502.00.

17.  There are no qualifying factors under the Equal Pay act (seniority, merit, or otherwise) that justify the disparity in pay between the Plaintiffs and Dr.s Shrider and Nixon.

**KNOWN GENDER BIAS IN TEACHING EVALUATIONS USED BY DEFENDANT MIAMI UNIVERSITY FURTHER EXACERBATES PAY DIFFERENTIAL**

18.  In addition to comparing favorably to their male comparators in the criteria used above, Plaintiffs have also been unfairly penalized by Miami using a teacher evaluation system that is biased in favor of the male instructors.

19.  Upon information and belief, Miami University has studied and is aware of the inherently biased evaluation system which skews pay in the direction of males, but has made no adjustment for such bias.  While, even without such bias, Plaintiffs are substantially underpaid as contrasted with their male comparators, once such bias is considered, the pay differential is exacerbated even further.

**HOSTILE ENVIRONMENT IN COMMITTEE APPOINTMENTS, TREATMENT IN DEPARTMENT, AND IN APPOINTMENT OF AN UNQUALIFIED INVESTIGATOR AS A WHITEWASHER OF GENDER DISCRIMINATION, WHO ISSUED A CLEARLY BIASED RULING  DEFAMING  PLAINTIFFS, BUT WAS NEVERTHELESS APPOINTED TO REVIEW HIS OWN CLEARLY BIASED REPORT**

20.     In early 2015, Professors Brunarski and Harman complained about gender discrimination

within their department. Notably, they complained that one of the assistants hired to be considered for tenure, Mary Elizabeth Thompson, was unfairly singled out and discriminated against in being given a letter in her file containing criticisms that could as easily been leveled against male persons similarly situated but were not.

21. Both Professor Brunarski and Professor Harman also complained of other instances of gender discrimination in the department, including an atmosphere of an "old boys network", anonymous derogatory emails towards them sent by a faculty member clearly within their department, being shut out from consideration or not selected for Department chairs for which they were well qualified.

22. The Plaintiffs complained of gender discrimination and bias against them to multiple University representatives, including the department chair, the Provost, and the EEO officer for the university.

23. In addition, Dr. Dan Herron, a tenured and respected Professor who had been appointed to chair of the P & T Committee, (which rates the progress of new hires and determines the progress toward tenure of junior (untenured) faculty members) complained of systemic gender bias in the Finance Department, and additionally complained that a second year hire, Dr. Mary Elizabeth Thompson, had been subjected to unfair gender discrimination by certain male members of the P & T committee, who insisted upon inserting language in her review letter stating that she had failed to meet expectations for "Collegiality", a 10% part of her Department Review, because she had allegedly missed four seminars during the evaluation period.

24. In fact, Mary Elizabeth Thompson had not missed four seminars, but only two; one of which was announced three days in advance and one of which was announced ten days in advance. In each case, she had had plans made months before. One on the absences was cleared

5

by the very same male Professor who later complained about it.

25. Moreover, a male comparator, Dr. Colin Campbell, had in fact actually missed four seminars and was not downgraded in the "Collegiality" section of his review letter.

26. Dr. Dan Herron, an attorney who teaches business law at Defendant Miami University, sent a charge of discrimination to the EEO officer of Defendant Miami University alleging a "long-standing pattern of "gender discrimination and bias". He cited the discrimination against Dr. Mary Elizabeth Thompson as "the latest example". He also referenced how, upon her arrival at Defendant Miami University, Dr. Thompson was assigned an office close to one of her detractors. During the time between the P&T meeting in February, 2015 and the delivery of her second letter in April, Dr. Thompson stated that her detractors would often whisper in the hall outside her door, quickly relocating their conversation if she ventured into the hall. Dr. Harman suggested that Dr. Thompson relocate her office to a friendlier location and Dr. Thompson agreed. Dr. Harman requested and received permission from Associate Dean Maria Cronley for Dr. Thompson to move her office. So, in essence, Dr. Thompson moved her office away from one of her detractors because of the environment they created for her.

27. Defendant Miami University decided to abdicate their responsibility to investigate the matter, and, upon information and belief, proceeded to turn the matter over to the Attorney General, who assigned an investigator who had limited experience in gender discrimination and employment to investigate the charge of gender discrimination.

28. Defendant Miami University accepted the investigator without verifying his qualifications, experience, and credentials.

29. The investigator, Juan Jose Perez, in spite of his lack of experience and qualifications, conducted an allegedly impartial investigation, for which he charged Defendant Miami

University over $18,000.00. The report of the investigation was replete with numerous errors of fact, law, and conclusion. It was unsound in structure, deficient in principle, and failed in application.

30. Indeed, the very first witness interviewed, Mary Elizabeth Thompson, immediately complained that the investigation was <u>NOT</u> impartial but biased against her.

31. Inter alia, the initial investigative report:

    a. Failed to correctly state the full charge that was being investigated (ignoring the allegations of widespread and systemic gender discrimination in the department).

    b. Was riddled with factual inaccuracies, including an assertion that the Department head, Dr. Wyatt, was unavailable for consultation (although he was present for the relevant times of the process); misspellings of key players, including Colin as "Collin", Griffiths as "Griffith", and Harman as "Harmon"; stating that Dr. Harman had "violated confidentiality" in talking about Committee criticisms to Dr. Thompson, when, in fact, she was charged by the Committee (as Thompson's mentor) with sharing such criticisms; and claimed that there could not have been gender discrimination because "Dr. Harman and Dr. Brunarski had not joined Dr. Herron's complaint of gender discrimination", when they had, in fact, independently complained to the provost, the Department Head, and the EEO officer, and had also informed the investigator of a willingness to join the Complaint.

    c. Was filled with key omissions, including the fact that the Investigator was informed of multiple instances of participation by Dr. Thompson not mentioned in the report, such as conducting her own "brown bag" seminars, interacting with instructors of the seminars the day before the seminars she missed, proctoring exams for other professors, and attending multiple sessions showing a higher than average degree of participation;

d. Was replete with examples of the investigator not being familiar with standard employment law concepts, including using a "same actor inference" when the same actors were not involved; failure to list and consider the systemic gender discrimination charge; not considering properly that a male comparator who missed the same (or greater) number of seminars as Dr. Thompson did not receive criticism on the EEO letter, and many more.

32. Dr. Herron, Dr. Thompson, Dr. Brunarski, and Dr. Harman pointed out many of the glaring flaws in the investigators report and requested the Defendant strike the report and have it done by an impartial investigator.

33. Defendant Miami University refused this request, and remanded the report to the same unqualified investigator with a request that he reinterview certain parties and address some of the numerous concerns with the report.

34. The investigator did not follow the instructions of Defendant Miami University, and instead issued a predictable, generic defense of his entrenched position.

35. Defendant Miami University eventually chose to throw out the improper letter in Dr. Thompson's file, but did not strike the investigator's report or reply in spite of the many incorrect statements that slandered the Plaintiffs in their trade or profession, choosing to adopt it, knowing it would be circulated throughout the University and harm the reputation of the Plaintiffs.

36. The Plaintiff professors have brought these gender bias concerns to the attention of Defendant Miami University, as well as their disparities in pay, which they were told by Dean Matthew Myers would be addressed no later than the end of the winter term.

37. However, Defendant Miami University, true to its continuing pattern of not seriously dealing with the Plaintiff professors' complaints, has failed to resolve the matter of the disparate pay and improper conduct and discrimination against women in the department by the end of

winter term.

## COUNT I – GENDER DISCRIMINATION IN PAYMENT OF WAGES IN VIOLATION OF THE EQUAL PAY ACT, 29 USC 206(d)(1)

38. Plaintiffs reallege all the foregoing paragraphs as if fully rewritten herein.

39. Defendant Miami University has engaged in gender discrimination against the female Plaintiffs, by paying them smaller wages than the wages of an male comparator, working in the same department, on jobs the performance of which require equal skill, effort, and ability, such disparity not based on merit, seniority, or other permissible factors.

40. Because the discrimination has been willful, Plaintiffs are entitled to their back pay in an amount that is equal to discrepancy in pay for the past three years, as well as their costs and reasonable attorney fees.

## COUNT II – GENDER DISCRIMINATION IN PAYMENT OF WAGES IN VIOLATION OF 4111.17 O.R.C. (Ohio Equal Pay Act)

41. Plaintiffs reallege all the foregoing paragraphs as if fully rewritten herein.

42. Defendant Miami University has engaged in gender discrimination against the female Plaintiffs, by paying them smaller wages than the wages of a male comparator, working in the same department, on jobs the performance of which require equal skill, effort, and ability, such disparity based neither on ability nor seniority.

43. Because the discrimination has been invidious and malicious, and with substantial disregard of the rights of Plaintiffs, Plaintiffs are entitled to their back pay in an amount that is equal to their worth to the department, to punitive damages sufficient to deter the institution from such acts in the future, as well as their costs and reasonable attorney fees.

## COUNT III: HOSTILE ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF 4112.02 O.R.C., ENFORCEABLE THROUGH 4112.99 O.R.C.

44. Plaintiffs reallege all the foregoing paragraphs as if fully rewritten herein.

45. The Defendants actions are tantamount to hostile work environment sexual harassment in violation of section 4112.02 of the Ohio Revised Code.

46. As a consequence, Plaintiffs are entitled to compensatory damages from Defendant, including emotional distress, lost pay, and pain and suffering.

47. Because the actions were in substantial disregard of a great probability of causing substantial harm to Plaintiffs, they are also entitled to punitive damages, their costs, and attorney fees.

**COUNT IV – RETALIATION**

48. Plaintiffs reallege all the foregoing paragraphs as if fully rewritten herein.

49. Defendant Miami University has retaliated against the Plaintiffs for their actions in complaining about pay discrepancies, in complaining about gender discrimination against Mary Elizabeth Thompson, and complaining of bias in the Department.

50. This bias has diminished their key positions.

51. As a result of this discrimination, Plaintiffs are entitled to compensatory damages for emotional distress and loss of back pay.

52. Because the University's retaliation against them was invidious and malicious, and a substantial disregard of their fundamental rights, the professors are entitled to their reasonable attorney fees, costs in this action, and punitive damages in an amount sufficient to deter such actions in the future.

**PRAYER FOR RELIEF**

WHEREFORE, having fully pleaded their cause, Professors Kelly Brunarski and Yvette Harman pray that this honorable Court award them from Defendant Miami University an


amount of compensatory damages to be determined in excess of $250,000.00 each, for their suffering, emotional distress, back pay, liquidated damages, their attorney fees and costs in this action, punitive damages sufficient to deter such action in the future, and any and other such other relief as this court or a jury may direct.

                                              Respectfully submitted,

                                              ***/s/ Robert F. Croskery***
                                              Robert F. Croskery (0064802)
                                              Trial Attorney for Plaintiffs
                                              Croskery Law Offices
                                              810 Sycamore St., 2nd Floor
                                              Cincinnati, OH 45202
                                              Phone: (513) 232-LAWS (5297)
                                              Fax: (513) 338-1992
                                              rcroskery@croskerylaw.com

Of Counsel:
Croskery Law Offices
Melinda E. Knisley (002662)
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Phone: (513) 232-LAWS (5297)
Fax: (513) 338-1992

## JURY DEMAND

    Plaintiff hereby demands trial by a jury of eight to hear the within cause.

                                              ***/s/ Robert F. Croskery***
                                              Robert F. Croskery (0064802)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was placed upon the Court's electronic server for service to the appropriate parties on the date electronically stamped hereon.

                                              ***/s/ Robert F. Croskery***
                                              Robert F. Croskery (0064802)