IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kelly Brunarski, et al., : | |
| : | Case No. 1:16-cv-0311 |
| Plaintiffs, : | |
| : | Judge Susan J. Dlott |
| v. : | |
| : | Magistrate Stephanie K. Bowman |
| Miami University, : | |
| : | |
| Defendant. : | |

**DEFENDANT MIAMI UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

Now comes Defendant, Miami University, by and through counsel and, pursuant to Fed. R. Civ. P. 56, hereby moves this Honorable Court to grant summary judgment in its favor as there exists no issue of material fact that Plaintiffs' sole claim of violation of the Equal Pay Act, 29 U.S.C. § 206 (d)(1), fails as a matter of law. A memorandum in support is attached hereto and incorporated herein by reference.

Respectfully submitted,

MICHAEL DEWINE (009181)
Ohio Attorney General

/s/ Christina L. Corl
Christina L. Corl (0067869)
**PLUNKETT COONEY**
300 East Broad Street, Suite 590
Columbus, Ohio 43215
Tel: (614) 629-3018
Fax: (614) 629-3019
Email: ccorl@plunkettcooney.com
*Counsel for Defendant, Miami University*

1

## MEMORANDUM IN SUPPORT

### I. Introduction.

Plaintiffs Kelly Brunarski and Yvette Harman (hereinafter collectively "Plaintiffs") commenced this action on February 15, 2016 against their employer, Miami University, alleging violations of 29 U.S.C. § 206(d)(1), R.C. § 4111.17, R.C. § 4112.02 and retaliation. (ECF #1). Plaintiffs filed a First Amended Complaint on March 24, 2016 alleging identical claims. (ECF# 5). Defendant Miami University (hereinafter "Miami" or "the University") filed a Motion to Dismiss three of the four claims contained in the First Amended Complaint. (ECF #6). Thereafter, Plaintiffs filed a Second Amended Complaint and abandoned all claims except their claim that they have been subject to gender discrimination with respect to their compensation. (ECF # 22). Miami now moves for summary judgment with respect to the single claim pending in this case: Plaintiffs' claim of gender discrimination in compensation brought pursuant to 29 U.S.C. § 206(d)(1).

### II. Undisputed Facts.

Plaintiffs are both tenured professors in the Department of Finance of Miami's Farmer School of Business. (Second Am. Compl., ECF # 22, ¶¶3, 4). Plaintiff Brunarski began her employment at the University in 1999 and Plaintiff Harman began her employment in 2000. Id., ¶¶ 6, 7.

Plaintiffs have identified two male tenured professors, also in the Department of Finance of the Farmer School of Business as comparators, upon which they base

2

their gender discrimination in compensation claim – David Shrider and Terry Nixon. Id., ¶¶ 10-17. Plaintiffs allege that Professors Shrider and Nixon are comparable to them in length of tenure, skill and responsibility, but are compensated more favorably by the University than the Plaintiffs. Id. All parties, including the Plaintiffs, agree that up until academic year 2012/2013, Plaintiffs, Shrider and Nixon were compensated commensurately, but that in 2012, Shrider and Nixon were awarded much larger compensation increases than Plaintiffs, resulting in a wage difference going forward to the present. (Brunarski Depo., pg. 45, Ex. A; Harman Depo.,[1] pg. 11, Ex. B; Miami Select Finance Faculty Increments, Miami_Prod 034361,[2] Ex. C).[3] Plaintiffs have focused in this case on the base salary set for them and Professors Shrider and Nixon. This "base salary" does not include compensation for teaching study-abroad programs, workshops, courses in Miami University's Professional MBA Program, winter and summer term courses or compensation for teaching awards. Professors Shrider and Nixon participate in these additional programs and Plaintiffs do not. (Ex. C). Therefore, Plaintiffs have chosen "comparators" to them for purposes of their claim that are not, in fact, comparable.

---

[1] All deposition transcripts cited herein have been filed in their entirety with the Clerk of Courts. Cited pages are attached as exhibits hereto for the Court's convenience.
[2] The Parties have stipulated to the authenticity of all documents produced during discovery. (Stipulation, ECF # 32).
[3] The compensation listed in Exhibit C for Plaintiffs and Professors Shrider and Nixon represents "base" pay. This number does not include compensation paid to Professors Shrider and Nixon for teaching study-abroad classes, workshops, winter and summer term courses or Professional MBA classes. Plaintiffs do not participate in study-abroad programs, workshops or MBA courses, nor do they teach during winter or summer terms.

When examining the full range of compensation for Plaintiffs and Professors Shrider and Nixon, the salary differences are as follows:

**Brunarski**

|          | Base    | Base adjustment | summer | TOTAL   |
|----------|---------|-----------------|--------|---------|
| 2010-11  | 130,000 |                 |        | 130,000 |
| 2011-12  | 141,000 |                 |        | 141,000 |
| 2012-13  | 151,500 |                 |        | 151,500 |
| 2013-14  | 160,500 |                 |        | 160,500 |
| 2014-15  | 165,700 |                 |        | 165,700 |
| 2015-16  | ~~172,350~~ | 183,502     |        | 183,502 |
| 2016-17  | 188,668 |                 |        |         |

**Harman**

|          | Base    | Base adjustment | summer |                   | TOTAL   |
|----------|---------|-----------------|--------|-------------------|---------|
| 2010-11  | 130,947 |                 |        |                   | 130,947 |
| 2011-12  | 141,947 |                 |        |                   | 141,947 |
| 2012-13  | 154,447 |                 |        |                   | 154,447 |
| 2013-14  | 163,447 |                 |        |                   | 163,447 |
| 2014-15  | 168,647 |                 |        |                   | 168,647 |
| 2015-16  | ~~176,238~~ | 183,502     | 858    | Agile initiative  | 184,360 |
| 2016-17  | 188,668 |                 |        |                   |         |

**Nixon**

|         | Base    | PMBA teaching | winter |              | summer |             | summer          | summer   | Teaching Award | TOTAL   |
|---------|---------|---------------|--------|--------------|--------|-------------|-----------------|----------|----------------|---------|
| 2010-11 | 130,116 |               |        |              | 14,300 | SBI         | 23,420 Ox teaching | 140 workshop |            | 167,976 |
| 2011-12 | 141,116 |               |        |              | 25,400 | Ox teaching |                 |          | 5,000          | 171,516 |
| 2012-13 | 163,616 | 14,725        |        |              | 29,450 | Ox teaching |                 |          |                | 207,791 |
| 2013-14 | 173,426 | 15,608        |        |              | 31,216 | Ox teaching |                 |          |                | 220,250 |
| 2014-15 | 179,026 | 16,112        | 16,112 | Ox teaching  | 32,224 | Ox teaching |                 |          |                | 243,474 |
| 2015-16 | 183,502 | 16,515        | 16,515 | study abroad | 33,030 | Ox teaching |                 |          |                | 249,562 |
| 2016-17 | 189,039 | 17,014        | 34,028 | Ox teaching  |        |             |                 |          | 2,000          |         |

PMBA-    Professional MBA Program taught at VOA
SBI-    Summer Business Institute

**Shrider**

|         | Base    | PMBA teaching | winter |          | summer |          | Teaching Award | TOTAL   |
|---------|---------|---------------|--------|----------|--------|----------|----------------|---------|
| 2010-11 | 135,000 | 28,000        |        |          |        |          |                | 163,000 |
| 2011-12 | 149,500 | 28,000        |        |          | 17,940 | workshop |                | 195,400 |
| 2012-13 | 173,600 | 15,000        | 10,416 | workshop | 15,624 | Lux workshop | 5,000      | 219,640 |
| 2013-14 | 184,015 | 30,000        | 33,122 | Ox teaching |     |          | 2,000          | 249,137 |
| 2014-15 | 191,015 | 30,000        | 34,383 | workshop | 22,922 | workshop | 2,000          | 280,320 |
| 2015-16 | 197,700 | 15,000        | 17,793 | workshop | 6,000  | research |                | 236,493 |
| 2016-17 | 203,840 | 15,000        | 19,646 | workshop |        |          |                |         |

4

(See Affidavit of Celia Ellison, Ex. H).

Both Plaintiffs have testified that they do not know how their compensation was set by the University during the time period in question. (Brunarski Depo., pgs. 16, 86-87; Harman Depo., pgs. 12-13). Nor do Plaintiffs have an explanation for the large base compensation increases awarded to Professors Shrider and Nixon in 2012 (other than their unsupported claim of gender discrimination.) Id. Plaintiffs do claim, however, that student teaching evaluations completed by students who take their classes are skewed by "gender bias," and that these gender-biased teaching evaluations have negatively effected their compensation. (Second Am. Compl., ¶ 20). Plaintiffs make this claim even though they both admit that they have no idea how, or the extent to which, the alleged gender-biased teaching evaluations effected their compensation. (Brunarski Depo., pg. 85-86; Harman Depo., pg. 30). Nor can Plaintiffs provide anything but speculation that their own student teaching evaluation scores reflect a gender bias against them. Id., pgs. 68-70 and 39-41.

Neither Plaintiff ever made a formal complaint about their compensation, as provided for in University policy, until the fall of 2015. (Brunarski Depo., pg. 20-21; Harman Depo., pg. 41-42). Once they requested a formal compensation review with the Office of the Dean of the Farmer School of Business, a review was completed and Plaintiffs were awarded supplementary base-salary raises, retroactive to the summer of 2015. Id., see also Salary Equity Review, Miami_Prod 34407 to 34413, Ex. D. There was no evidence of gender bias found in the salary review. Id.

5

Plaintiffs continue to claim that they are not properly compensated, even after the salary equity review. (Second Am. Compl., ¶ 23).

The setting of compensation (base pay) for faculty in the Farmer School of Business at Miami is a multi-tiered annual process. First, a University-wide compensation pool provides merit pay increases for all faculty members of the University. (See, e.g., Ex. C). The annual merit pay increases are awarded by the Department Chair and approved by the Dean of each individual school within the University. Id. During years when funds are available campus-wide there are also available "super merit" base compensation adjustments to be awarded to faculty. (Affidavit of Timothy Krehbiel, Ex. E, ¶ 2). One such year that funding was available for super-merit base salary raises was 2012. Id. According to Timothy Krehbiel, former Senior Associate Dean of the Farmer School of Business:

> . . . super merit money came from a merit pool held by the Dean, market adjustment money from the Provost, and money generated from the business school course surcharge. The vast majority of the super merit money came from the business course surcharge, a fee approved by the Board of Trustees to recruit and retain world-class faculty members.

Id.

In the Farmer School, the criteria for the awarding of "super merit" compensation is set by the Dean. Id., ¶ 3. For the time period at issue in this case (2012), the criteria set by the Dean, and applied by Senior Associate Dean Krehbiel, for awarding super merit compensation was, "involvement in FSB study abroad

6

programs, exceptional performance in teaching as demonstrated through significant accomplishment, recognition and awards, and exceptional performance in research as demonstrated by significant accomplishment, recognition and awards." Id.

In 2012, Senior Associate Dean Krehbiel conducted an assessment and made recommendations, which were accepted by the Dean, for super merit base compensation increases to become effective in the 2012/2013 academic year. Id., ¶ 5. Based upon Krehbiel's analysis, the following super merit increases were awarded: Harman $10,000; Brunarski $8,000; Nixon $19,500; and Shrider $21,000. Id., ¶ 4; see also Ex. C. This reflects the "large increase" in 2012 for Professors Shrider and Nixon referred to by Plaintiffs in their depositions – which has resulted in the ongoing pay differences of which Plaintiffs complain. (Brunarski Depo., pg. 45; Harman Depo., pg. 11). The super merit pay increases were awarded in 2012 to Professors Shrider and Nixon *not because of gender and not taking into account any student teaching evaluations.* (Krehbiel Aff., ¶ 3, 5 ("The criteria examined for these [super merit] raises did not include any analysis or review . . . of student teaching evaluations.")). Instead, the larger super merit increases were awarded to Professors Shrider and Nixon for the following reasons:

> a.) Both Nixon and Shrider were involved in FSB Study Abroad programs (Shrider had lead the FSB Far East program in the summer of 2010 and was leading the FSB Europe program in the summer of 2012. Nixon had participated in the FSB Far East in 2007 and in the summer of 2011 taught in London as part of the Summer Business Institute program). Professors Brunarski and Harman were not currently or recently engaged in FSB

7

> study abroad programs. b.) Both Nixon and Shrider were recent recipients of teaching awards (Shrider had won the 2008 Smucker Teaching Excellence Award, the highest teaching honor given out by the Farmer School, the 2008-2009 and 2009-2010 MBA Professor of the Year Award, and in 2010 was nominated for Associated Student Government Outstanding Professor of the Year, perhaps the highest teaching honor awarded by Miami. Nixon had won the 2007 Smucker Teaching Excellence Award, the 2007 PSE Outstanding Professor Award, the 2008 MBA Teaching Award as the best boot camp instructor, and was just awarded the 2012 Smucker Teaching Excellence Award.). Professors Brunarski and Harman had no recent history of significant awards or recognition for their teaching. The achievements of Professors Nixon and Shrider in the areas identified by Dean Jenkins as merit criteria for super merit compensation clearly exceeded the achievements in those areas by Professors Harman and Brunarski.

Id., ¶ 5.

Not only has Miami provided nongender-based explanations for any compensation difference between Plaintiffs and their alleged comparators, Professors Shrider and Nixon, but the compensation data from the Farmer School of Business does not support Plaintiffs' claims of gender inequity. Specifically, the average base compensation for male professors in the Farmer School over the past ten years is slightly *less than* the average base compensation for female professors. (See Compensation Study, attached as Exhibit B to Brunarski's Deposition transcript, demonstrating the average annual compensation for male faculty to be $133,024.00 and the average annual compensation for female faculty to be $135,169.00). Both Plaintiffs testified in their depositions that they have no reason

8

to dispute the compensation study or the analysis contained therein. (Brunarski Depo., pgs. 53-54; Harman Depo., pgs. 34-35).

Because it is undisputed that Professors Shrider and Nixon are not comparators to Plaintiffs and because Plaintiffs' complaints of compensation disparity have no relationship to their gender, but, instead, are based on quantifiable merit-based criteria, Plaintiffs' sole remaining claim in their Second Amended Complaint must be dismissed.

### III. Law and Argument.[4]

The Equal Pay Act (hereinafter "EPA") prohibits employers from paying an employee less than that paid to an employee of the opposite sex for the same work. 20 U.S.C. § 206 (d)(1). In order to establish a prima facie case of wage discrimination under the EPA, Plaintiffs must show that an employer pays different wages to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974). A plaintiff must demonstrate a wage disparity "by comparison to a specific male comparator, which must be pled with specificity." *Spencer v. Virginia State University,* 2016 WL 7026442, * 4 (E.D. Va., November 30, 2016)(citing *Houck v. Virginia Polytechnic Inst.,* 10 F. 3d 204, 206 (4th Cir. 1993)). In other words, it is the

---

[4] Because this Court is well-versed in the standard for granting summary judgment, it will not be reiterated by the University here.

9

legal responsibility of Plaintiffs to identify appropriate male comparators. *Strag v. Bd. of Trustees, Craven Comm. College,* 55 F. 3d 943m 950 (4th Cir. 1995).

If the plaintiff establishes a prima facie case, the defendant has the burden to demonstrate that the wage differential "is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: 1.) a seniority system; 2.) a merit system; 3.) a system which measures earnings by quantity or quality of production; or 4. ) any other factor other than sex." *Buntin v. Breathitt County Bd. of Educ.,* 134 F. 3d 796, 700 (6th Cir. 1998). If a defendant provides evidence that the wage differential is justified under one of the Act's affirmative defenses, "the burden shifts back to the plaintiff to show pretext." *Beck-Wilson v. Principi,* 441 F. 3d 353, 360 (6th Cir. 2006).

### A. Plaintiffs Cannot Establish a Prima Facie Case Under the EPA.

In this case, Plaintiffs have specifically identified Professors Shrider and Nixon as their "comparators." (Second Am. Compl, ¶¶ 14-17). Plaintiffs have the burden of proving that they and their comparators held positions "which require[d] equal skill, effort, and responsibility, and which [were] performed under similar working conditions." *EEOC v. Romeo Community Schools,* 976 F.2d 985, 987 (6th Cir. 1992). Plaintiffs must prove that the job responsibilities and functions of their positions and their male comparators are "substantially equal." *Beck-Wilson,* 441 F.3d at 362-63. It is not enough to compare "job classifications or titles," Plaintiffs must demonstrate that their male comparators "performed substantially equal work

and had substantially similar job responsibilities." Id. at 362; *Griffiths v. Winnebago Industries, Inc.,* 369 F. Supp. 1063, 1069 (N.D. Iowa 2005). "The similarity between comparators. . . must be clearly established" by Plaintiffs. *Lightner v. City of Wilmington,* 545 F. 3d 260, 265 (4th Cir. 2008).

For instance, in a recent case involving a claim of disparate pay, a federal district court held that the plaintiff was unable to establish that her alleged comparators performed substantially equal job responsibilities, so she was unable to demonstrate a prima facie case of wage discrimination. *Bragg v. Bd. of Governors of N.C. State Univ. at Raleigh,* 2017 WL 384311 (E.D.N.C., Jan. 25, 2017). In *Bragg,* the plaintiff was a college professor who claimed that male professors whom she identified as comparators were paid more than her. Even though the plaintiff was able to demonstrate that she and her male comparators "shared the same job title, supervisor and a number of similarities in their employment," the court held that the claim still failed because "relevant differences" in job responsibilities demonstrated that there was no substantial similarity upon which to base a wage disparity claim. Id., *11-13.

The same is true here. Plaintiffs have provided nothing but conclusory allegations that the "male comparators" work "in the same department, on jobs the performance of which require equal skill, effort and ability. . . ." (Second Am. Compl., ¶ 25). In fact, as has been demonstrated by the documentary evidence attached hereto, Professors Shrider and Nixon have relevant differences in job

11

responsibilities, so that their positions are *not* substantially similar to Plaintiffs. Professors Shrider and Nixon, although in the same department as Plaintiffs, teach different classes, have different schedules, participate in different research projects and publications, teach Professional MBA Program courses (Plaintiffs do not), teach during the winter and summer terms (Plaintiffs do not), and teach study-abroad classes and multiple workshop classes (Plaintiffs do not). See Exs. D, E, F (Defendant Miami's Responses to Plaintiffs' Second Requests for Admission) and H. In essence, all Plaintiffs can demonstrate with respect to Professors Shrider and Nixon is that they work in the same department and that they have the same job titles as Plaintiffs. That is not sufficient to meet Plaintiffs' burden of demonstrating that their male comparators "performed substantially equal work and had substantially similar job responsibilities." *Griffiths,* 369 F. Supp. at 1069; *Bragg,* 2017 WL 384311, *11-13. As such, Plaintiffs have not met their burden of demonstrating the male comparators they have cited hold job responsibilities that are substantially equal, and their EPA claim fails as a matter of law.

    **B.    Miami has Provided a Legitimate, Non-Discriminatory Explanation for any Base Pay Differential between Plaintiffs and Their Claimed Comparators.**

Even if Plaintiffs could establish a prima facie case, Defendants have produced unrefuted evidence that any base pay differential between Plaintiffs and their alleged comparators is founded upon a merit system and is based upon factors unrelated to gender. Plaintiffs admit that there was no base wage differential

12

between them and Professors Shrider and Nixon until 2012. (Brunarski Depo., pg. 45, Ex. A; Harman Depo., pg. 11, Ex. B). In 2012, Professors Shrider and Nixon received larger "super merit" raises than Plaintiffs, and that base salary differential has carried forward to the present. Since the large super merit increases received by Professors Shrider and Nixon, effective for the 2012/2013 academic year, those professors and the Plaintiffs have received nearly identical annual merit base pay raises through the Farmer School of Business. (See Compensation Study, attached as Exhibit B to Brunarski's Deposition transcript). As such, the current compensation differential cited by Plaintiffs traces directly back to, and is explained by, the super merit base pay raises awarded in 2012.

While Plaintiffs admit that they do not know how their compensation was determined in 2012 or any time thereafter (Brunarski Depo., pgs. 16, 86-87; Harman Depo., pgs. 12-13), they have spent the lion's share of this case claiming that student teaching evaluations are gender biased. Plaintiffs allege that these gender-biased teaching evaluations have resulted in them receiving lower teaching scores than their comparators and have negatively effected their base compensation. (Second Am. Compl., ¶ 20). Plaintiffs make this claim even though they both admit that they have no idea how, or the extent to which, the alleged gender-biased teaching evaluations effected their compensation. (Brunarski Depo., pg. 85-86; Harman Depo., pg. 30). Nor can Plaintiffs provide anything but speculation that their own student teaching evaluation scores reflect a gender bias against them. Id., pgs. 68-70

13

and 39-41. More importantly, the expert witness retained by Plaintiffs, Philip Stark, provides no support for their claim that Plaintiffs' own student teaching evaluations – or Plaintiffs' compensation – has been effected in any way by alleged gender bias. Dr. Stark testified as follows:

> Q. . . . [D]o you have any specific opinion that Professors Brunarski and Harman have been unfairly influenced by gender bias in their own personal and specific teaching evaluations?
>
> A. I do not have any direct evidence of that.
>
> Q. Okay. And is it possible that Professors Brunarski and Harman just aren't as good of teachers as Professor Shrider and Nixon? Isn't that possible?
>
> A. It's absolutely possible. . . .

(Stark Depo., pgs. 26-27, Ex. G).

\* \* \* \*

> Q. And I just want to make sure I understand your testimony. You have no specific information or opinion about if, how, and the extent to which, the compensation of Professors Brunarksi and Harman were influenced by what you have characterized as gender-biased student teaching evaluations; is that correct?
>
> MR. CROSKERY: Objection. Objection.
>
> BY MS. CORL: Q. You can answer.
>
> A. So, my position is that, in general, student evaluations are biased by a variety of factors, including instructor gender. That, in general, women tend to get lower ratings than men.
>
> Q. ... Let's just say that's a given for the sake of my question.
>
> A. Okay. I cannot quantitatively state how those general facts about the world affected the compensation of either of the plaintiffs.

14

> Q. Okay. Well, you can't state that it affected their compensation at all, can you? You don't have any evidence to support that?
>
> A. I don't have any direct evidence to support that, that's correct.

Id., pg. 36.

In addition, even if Plaintiffs could produce some evidence that their own student teaching evaluations are, in fact, effected by gender bias, the undisputed evidence demonstrates that the current compensation differential between Plaintiffs and their selected comparators is wholly unrelated to student teaching evaluations. As explained by former Senior Associate Dean for the Farmer School of Business, Timothy Krehbiel, the super merit salary increases awarded to Professors Shrider and Nixon in 2012 were not based upon any consideration of student teaching evaluations. (Krehbiel Aff., ¶ 3, 5 ("The criteria examined for these [super merit] raises did not include any analysis or review . . . of student teaching evaluations.")). Instead, the larger super merit base pay increases were awarded to Professors Shrider and Nixon for the following reasons:

> a.) Both Nixon and Shrider were involved in FSB Study Abroad programs (Shrider had lead the FSB Far East program in the summer of 2010 and was leading the FSB Europe program in the summer of 2012. Nixon had participated in the FSB Far East in 2007 and in the summer of 2011 taught in London as part of the Summer Business Institute program). Professors Brunarski and Harman were not currently or recently engaged in FSB study abroad programs. b.) Both Nixon and Shrider were recent recipients of teaching awards (Shrider had won the 2008 Smucker Teaching Excellence Award, the highest teaching honor given out by the Farmer School, the 2008-

15

>2009 and 2009-2010 MBA Professor of the Year Award, and in 2010 was nominated for Associated Student Government Outstanding Professor of the Year, perhaps the highest teaching honor awarded by Miami. Nixon had won the 2007 Smucker Teaching Excellence Award, the 2007 PSE Outstanding Professor Award, the 2008 MBA Teaching Award as the best boot camp instructor, and was just awarded the 2012 Smucker Teaching Excellence Award.). Professors Brunarski and Harman had no recent history of significant awards or recognition for their teaching. The achievements of Professors Nixon and Shrider in the areas identified by Dean Jenkins as merit criteria for super merit compensation clearly exceeded the achievements in those areas by Professors Harman and Brunarski.

Id., ¶ 5.

Pursuant to the EPA and applicable caselaw, Miami has proven an affirmative defense to Plaintiffs' claims by demonstrating that the base salary differential is as a result of a merit system as well as a "factor other than sex." There can be no quarrel that the criteria set for awarding super merit compensation – involvement in FSB study abroad programs, exceptional performance in teaching as demonstrated through significant accomplishment, recognition and awards, and exceptional performance in research as demonstrated by significant accomplishment, recognition and awards – are merit factors and factors other than sex. Clearly, raising the profile of the University by designing and supervising study abroad programs and demonstrating exceptional performance in teaching and research are legitimate business goals of any institution of higher education. *EEOC v. J.C. Penney*, 843 F. 2d 249, 253 (6th Cir. 1988)(The factor-other-than-sex "catch all" provision of

16

the Equal Pay Act is satisfied if the factor "was adopted for a legitimate business reason.")

In conclusion, there is no material dispute that:

1. Plaintiffs cannot establish a prima facie claim for violation of the EPA because they cannot meet their burden to demonstrate that their job responsibilities and those of their alleged male comparators are substantially similar.

2. Plaintiffs disparate compensation claims are based on a one-time super merit raise awarded to Plaintiffs' selected comparators, Professors Shrider and Nixon, that has effected their base compensation to the current day.

3. Timothy Krehbiel's explanation of the reasons for the 2012 super merit base salary increases for Professors Shrider and Nixon establishes "factors other than sex" that were utilized to set compensation. His explanation cannot be refuted by Plaintiffs.

Wherefore, Defendant Miami University respectfully requests this Honorable Court to grant summary judgment in its favor pursuant to Fed. R. Civ. P. 56 and dismiss Plaintiffs' sole claim under the Equal Pay Act with prejudice.

Respectfully submitted,

**MICHAEL DEWINE (009181)**
**Ohio Attorney General**

/s/ Christina L. Corl
Christina L. Corl (0067869)
**PLUNKETT COONEY**
300 East Broad Street, Suite 590
Columbus, Ohio 43215

Tel: (614) 629-3018
Fax: (614) 629-3019
Email: ccorl@plunkeetcooney.com
*Counsel for Defendant,*
*Miami University*

## **CERTIFICATE OF SERVICE**

Please take notice that the counsel hereby certifies that the foregoing *Defendant Miami University's Motion for Summary Judgment* was electronically transmitted to the Clerk's Office, using the electronic filing system, this **24th day of March, 2017**, which will electronically notify all parties of record:

/s/ Christina L. Corl
Christina L. Corl

Open.25577.60629.18211761-1